**U.S. Department of Justice**

Federal Bureau of Prisons

*Washington, D.C. 20534*
November 14, 2008

MEMORANDUM FOR CHIEF EXECUTIVE OFFICERS

FROM: Kathleen M. Kenney
Assistant Director/General Counsel

Joyce K. Conley, Assistant Director
Correctional Programs Division

SUBJECT: Inmate Requests for Transfer to Residential Reentry Centers

This memorandum provides guidance to Bureau of Prisons (Bureau) staff for considering and responding to inmate requests for transfer to Residential Reentry Centers (RRCs), when more than 12-months remain from their projected release date.[1] Questions regarding this guidance should be directed to the Correctional Programs Branch, and/or your Regional Counsel or Consolidated Legal Center.

**Individualized Consideration Required**

Inmates are legally eligible to be placed in an RRC at any time during their prison sentence. Federal Courts have made clear that RRCs are penal or correctional facilities within the meaning of the applicable statutes. Staff cannot, therefore, automatically deny an inmate's request for transfer to a RRC. Rather, inmate requests for RRC placement must receive

[1] Previous guidance titled Pre-Release Residential Re-Entry Center Placements Following the Second Chance Act of 2007, was issued April 14, 2008, and remains in full effect. That guidance instructs staff how to review inmates for pre-release RRC placement during their last 12-months of incarceration. A copy of that guidance is included with this memorandum as an attachment. Regulations relating to that guidance were issued on October 21, 2008, and are located at 28 C.F.R. § 570.20 thru 570.22 (73 FR 62440).

individualized consideration. In other words, staff cannot say that an inmate, whatever the circumstances, is automatically ineligible for transfer to a RRC. Rather, staff must first review the inmate's request on its individual merits, in accordance with policy, and as explained in this guidance.

**Timing of Reviews**

If an inmate requests transfer to an RRC prior to the pre-release time frame of 12-months from release, staff must individually consider the request, just as they would any other request for lower security transfer. There is no need, however, to immediately perform the individualized review at the moment it is submitted. Rather, the inmate should be informed that his/her request will be fully reviewed in conjunction with the next scheduled Program Review.[2]

When informing inmates of the timing for review of transfer requests, it is vitally important that staff not inform the inmate (either orally or in writing) that he/she is ineligible for transfer to a RRC. Telling an inmate that he/she is ineligible for RRC placement is the same as automatically denying the inmate from even being considered for such placement, and is not in accord with Bureau policy.

**Designation Review Factors and Policy**

At the scheduled Program Review meeting where the inmate's RRC transfer request is considered, staff should review:

(1) the resources of the facility contemplated;
(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner;
(4) any statement by the court that imposed the sentence-
 (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
 (B) recommending a type of penal or correctional facility as appropriate; and
(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

These "five factors" are the foundation of Bureau Program Statement No. 5100.08, Inmate Security Designation and Custody Classification. That policy instructs that "[e]ach inmate will

---

[2] Inmate grievances claiming the current facility designation is "inappropriate," and seeking a different or lower security level (or RRC) placement should be responded to in this fashion as well.

be placed in a facility commensurate with their security and program needs through an objective and consistent system of classification which also allows staff to exercise their professional judgement."

Staff should also consider the resources of available RRCs, which are procured by the Bureau primarily to assist inmates in reintegrating into the community during the last 12-months of the prison sentence. As stated in Bureau Program Statement No. 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedures,[3] RRCs provide a "transitional environment for inmates nearing the end of their sentences." The level of structure and supervision available at these facilities is designed to assure accountability, provide program opportunities in employment counseling and placement, substance abuse, and aid inmates in acquiring daily life skills so as to successfully reintegrate into the community at large. An RRC placement beyond six months should only occur when there are unusual or extraordinary circumstances justifying such placement, and the Regional Director concurs.

**Inform the Inmate of the Decision**

If staff determine, in the exercise of their professional judgement and after individualized review, that the inmate's current designation is commensurate with his/her security and programming needs, the inmate will be informed that the current designation is appropriate, and that the transfer request is denied. The inmate can further be specifically informed, based on that assessment, that a requested transfer to an RRC is inappropriate.

If staff determine the inmate is appropriate for a RRC transfer, the unit team should request a transfer pursuant to the April 14, 2008 guidance. As indicated therein, RRC transfers for more than the last six months of the inmate's prison sentence require the Regional Director's concurrence.

Attachment

---

[3] Although this policy uses the term "Community Corrections Centers," that term was changed to "Residential Reentry Centers" by memorandum dated March 31, 2006, by John M. Vanyur, Assistant Director, Correctional Programs Division. The change was made to provide "a clearer description of the programs and services being offered" in such facilities.

**U.S. Department of Justice**

Federal Bureau of Prisons

*Washington, D.C. 20534*

April 14, 2008

MEMORANDUM FOR CHIEF EXECUTIVE OFFICERS

FROM: Joyce K. Conley, Assistant Director
Correctional Programs Division

Kathleen M. Kenney
Assistant Director/General Counsel

SUBJECT: Pre-Release Residential Re-Entry Center Placements Following the Second Chance Act of 2007

The Second Chance Act of 2007 (hereinafter referred to as "the Act"), Pub. L. No. 110-199, was signed into law April 9, 2008. Among its many provisions, the Act changes the Federal Bureau of Prisons' (Bureau) statutory authorities for making pre-release Residential Re-Entry Center (RRC) placement decisions.[1] This memorandum provides staff guidance for implementing those changes. Guidance regarding other Bureau policies affected by the Act will be issued, as necessary, under separate cover.

If necessary, further assistance should be sought from your regional Correctional Programs, Community Corrections, and Regional Counsel or Consolidated Legal Center offices.

---

[1] For your convenience, copies of 18 U.S.C. §§ 3621 and 3624(c), as amended by the Act, are included with this memorandum as attachments. Additionally, for your convenience, these copies illustrate the previous text as ~~strikeout~~, and the new text as **redline**.

**I. What are the statutory changes to RRC placement authorities?**

As interpreted by the Office of General Counsel, the Act's statutory changes affect the Bureau's RRC placement procedures as follows:

**(A) Pre-Release RRC Placement Timeframe Increased to 12 Months** - The pre-release RRC placement timeframe is increased to a maximum allowable 12 months. There is no percentage of "term to be served" limitation. See 18 U.S.C. § 3624(c)(1) (amended).[2]

**(B) Individualized Placement Decisions Required** - The Act requires that pre-release RRC placement decisions be made on an individual basis in every inmate's case, according to new criteria in the Act, as well as the criteria in 18 U.S.C. § 3621(b). See 18 U.S.C. § 3624(c)(6)(amended). As a result, the Bureau's categorical timeframe limitations on pre-release community confinement, found at 28 C.F.R. §§ 570.20 and 570.21, are no longer applicable, and must no longer be followed.[3]

**(C) Court Recommendations Lack Binding Effect** - The Act provides that a sentencing court order, recommendation, or request directing an inmate's placement in an RRC lacks binding effect. See 18 U.S.C. § 3621(b)(amended). As a result, the Bureau is not required to follow such a directive.[4]

**II. What procedures should staff use in making pre-release RRC decisions?**

With minor adjustments (explained in the next section), staff should make inmates' pre-release RRC placement decisions on an individual basis using current Bureau policy, Program Statement No. 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedure (12/16/1998)(hereinafter referred to as

---

[2] The pre-release home confinement timeframe remains at a maximum six months, or ten percent of the term of imprisonment of that prisoner, whichever is shorter. See 18 U.S.C. § 3624(c)(2) (amended).

[3] The Act requires the Bureau to issue new federal regulations regarding pre-release RRC placements. The federal regulation process (rulemaking) will take several months to complete. Bureau staff will be informed as soon as new regulations take effect.

[4] Sentencing court recommendations for a particular type institution, however, remain a factor to be considered when making pre-release RRC placement decisions. See, infra, Section III.(C)(4).



Exhibit A-2

PS 7310.04). As indicated in Section I.(B) above, the Bureau's categorical timeframe limitations on pre-release community confinement, found at 28 C.F.R. §§ 570.20 and 570.21, are no longer applicable, and must no longer be followed. Similarly, any previous guidance memorandums that were issued regarding those regulations are no longer applicable, and must no longer be followed.

**III. What procedural adjustments to current policy are required?**

Staff must comply with PS 7310.04 in considering inmates for pre-release RRC placements, with the following adjustments:

**(A) Disregard Section 5, Statutory Authority** - Because the Act amends the Bureau's statutory authorities related to pre-release RRC placements, the quoted passages in Section 5 of PS 7310.04 must be disregarded. Instead, if needed, refer to the amended versions included with this memorandum as attachments.

**(B) Review Inmates for Pre-Release RRC Placements 17-19 Months Before Projected Release Dates** - Because the Act increases the maximum available pre-release RRC placement timeframe to 12 months, Bureau staff must review inmates for pre-release RRC placements earlier than provided in PS 7310.04. Specifically, inmates must now be reviewed for pre-release RRC placements **17-19 months** before their projected release dates.

**(C) Criteria for Pre-Release RRC Placements** - The Act requires that inmates be individually considered for pre-release RRC placements using the following five-factor criteria from 18 U.S.C. § 3621(b):

(1) The resources of the facility contemplated;
(2) The nature and circumstances of the offense;
(3) The history and characteristics of the prisoner;
(4) Any statement by the court that imposed the sentence:
  (a) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
  (b) recommending a type of penal or correctional facility as appropriate; and
(5) Any pertinent policy statement issued by the U.S. Sentencing Commission.[5]

[5] As of this memorandum's date, the U.S. Sentencing Commission has not issued any policy statements related to the Bureau's pre-release RRC placement procedures.

Assessing inmates under the above criteria necessarily includes continuing to consider the more specific, and familiar, correctional management criteria found in PS 7310.04, including, but not limited to, the inmate's needs for services, public safety, and the necessity of the Bureau to manage its inmate population responsibly. In doing so, staff must not view any of the criteria listed in PS 7310.04, especially Sections 9 and 10, or any other policy, as automatically precluding an inmate's pre-release RRC placement. Rather, in accordance with the Act, each individual inmate's pre-release RRC decision must be analyzed and supported under the five-factor criteria.

**Additionally**, the Act requires staff to ensure that each pre-release RRC placement decision is "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." See 18 U.S.C. § 3624(c)(6)(C)(amended). This means Bureau staff must approach every individual inmate's assessment with the understanding that he/she is now eligible for a maximum of 12 months pre-release RRC placement. Provisions in PS 7310.04 that reflect any other possible maximum timeframe must be ignored.

**(D) Regional Director Approval Required for Pre-Release RRC Placement Beyond Six Months** - While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

**IV. Does the Act apply to inmates whose RRC decisions have already been made?**

Yes. Inmates previously reviewed for pre-release RRC placements under any circumstances, and not yet transferred to an RRC, must be reconsidered utilizing the standards set forth in this guidance memorandum, whereby they are eligible for a maximum of 12 months placement. These reviews must be conducted by the classification team and documented on the Inmate Activity record (BP-A381.058).

Any inmate whose Program Review is scheduled at a time when consideration for a 12 month RRC placement is not feasible, will need to be reviewed and documented as indicated above.

**§ 3621. Imprisonment of a convicted person** (as amended by the Second Chance Act of 2007, Pub. L. No. 110-199, April 9, 2008).

(a) Commitment to custody of Bureau of Prisons.--A person who has been sentenced to a term of imprisonment pursuant to the provisions of subchapter D of chapter 227 shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section 3624.

(b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence--

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse. **Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person.**

(c) Delivery of order of commitment.--When a prisoner, pursuant to a court order, is placed in the custody of a person in charge of a penal or correctional facility, a copy of the order shall be delivered to such person as evidence of this authority to hold the prisoner, and the original order, with the return endorsed thereon, shall be returned to the court that issued it.

(d) Delivery of prisoner for court appearances.--The United States marshal shall, without charge, bring a prisoner into court or return him to a prison facility on

order of a court of the United States or on written request of an attorney for the Government.

(e) Substance abuse treatment.--

(1) Phase-in.--In order to carry out the requirement of the last sentence of subsection (b) of this section, that every prisoner with a substance abuse problem have the opportunity to participate in appropriate substance abuse treatment, the Bureau of Prisons shall, subject to the availability of appropriations, provide residential substance abuse treatment (and make arrangements for appropriate aftercare)--

(A) for not less than 50 percent of eligible prisoners by the end of fiscal year 1995, with priority for such treatment accorded based on an eligible prisoner's proximity to release date;

(B) for not less than 75 percent of eligible prisoners by the end of fiscal year 1996, with priority for such treatment accorded based on an eligible prisoner's proximity to release date; and

(C) for all eligible prisoners by the end of fiscal year 1997 and thereafter, with priority for such treatment accorded based on an eligible prisoner's proximity to release date.

(2) Incentive for prisoners' successful completion of treatment program.--

(A) Generally.--Any prisoner who, in the judgment of the Director of the Bureau of Prisons, has successfully completed a program of residential substance abuse treatment provided under paragraph (1) of this subsection, shall remain in the custody of the Bureau under such conditions as the Bureau deems appropriate. If the conditions of confinement are different from those the prisoner would have experienced absent the successful completion of the treatment, the Bureau shall periodically test the prisoner for substance abuse and discontinue such conditions on determining that substance abuse has recurred.

(B) Period of custody.--The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

(3) Report.--The Bureau of Prisons shall transmit to the Committees on the Judiciary of the Senate and the House of Representatives on January 1, 1995, and on January 1 of each year thereafter, a report. Such report shall contain--

(A) a detailed quantitative and qualitative description of each substance abuse treatment program, residential or not, operated by the Bureau;

(B) a full explanation of how eligibility for such programs is determined, with complete information on what proportion of prisoners with substance abuse problems are eligible; and

(C) a complete statement of to what extent the Bureau has achieved compliance with the requirements of this title.

(4) Authorization of appropriations.--There are authorized to carry out this

subsection such sums as may be necessary for each of fiscal years 2007 through 2011.

(5) Definitions.--As used in this subsection--

(A) the term "residential substance abuse treatment" ~~means a course of individual and group activities, lasting between 6 and 12 months, in residential treatment facilities set apart from the general prison population-~~

~~(i) directed at the substance abuse problems of the prisoner;~~

~~(ii) intended to develop the prisoner's cognitive, behavioral, social, vocational, and other skills so as to solve the prisoner's substance abuse and related problems; and~~

~~(iii) which may include the use of pharmacoptherapies [FN1], if appropriate, that may extend beyond the treatment period;~~ **means a course of individual and group activities and treatment, lasting at least 6 months, in residential treatment facilities set apart from the general prison population (which may include the use of pharmocotherapies, where appropriate, that may extend beyond the 6-month period);**

(B) the term "eligible prisoner" means a prisoner who is--

(i) determined by the Bureau of Prisons to have a substance abuse problem; and

(ii) willing to participate in a residential substance abuse treatment program; and

(C) the term "aftercare" means placement, case management and monitoring of the participant in a community-based substance abuse treatment program when the participant leaves the custody of the Bureau of Prisons.

(6) Coordination of Federal assistance.--The Bureau of Prisons shall consult with the Department of Health and Human Services concerning substance abuse treatment and related services and the incorporation of applicable components of existing comprehensive approaches including relapse prevention and aftercare services.

(f) Sex offender management.--

(1) In general.--The Bureau of Prisons shall make available appropriate treatment to sex offenders who are in need of and suitable for treatment, as follows:

(A) Sex offender management programs.--The Bureau of Prisons shall establish non-residential sex offender management programs to provide appropriate treatment, monitoring, and supervision of sex offenders and to provide aftercare during pre-release custody.

(B) Residential sex offender treatment programs.--The Bureau of Prisons shall establish residential sex offender treatment programs to provide treatment to sex offenders who volunteer for such programs and are deemed by the Bureau of Prisons to be in need of and suitable for residential treatment.

(2) Regions.--At least 1 sex offender management program under paragraph (1)(A), and at least one residential sex offender treatment program under paragraph (1)(B), shall be established in each region within the Bureau of Prisons.

(3) Authorization of appropriations.--There are authorized to be appropriated to the Bureau of Prisons for each fiscal year such sums as may be necessary to carry out this subsection.

**(g) CONTINUED ACCESS TO MEDICAL CARE.—**

**(1) IN GENERAL.—In order to ensure a minimum standard of health and habitability, the Bureau of Prisons should ensure that each prisoner in a community confinement facility has access to necessary medical care, mental health care, and medicine through partnerships with local health service providers and transition planning.**

**(2) DEFINITION.—In this subsection, the term "community confinement" has the meaning given that term in the application notes under section 5F1.1 of the Federal Sentencing Guidelines Manual, as in effect on the date of the enactment of the Second Chance Act of 2007.**

[*BOP Editor's Note: The definition of "community confinement" provided in the application notes under U.S.S.G. § 5F1.1 on April 9, 2008, is as follows:*

"*'Community confinement' means residence in a community treatment center, halfway house, restitution center, mental health facility, alcohol or drug rehabilitation center, or other community facility; and participation in gainful employment, employment search efforts, community service, vocational training, treatment, educational programs, or similar facility-approved programs during non-residential hours."*]

**§ 3624. Release of a prisoner**
(as amended by the Second Chance Act of 2007, Pub. L. No. 110-199, April 9, 2008).

* * *

~~(c) Pre-release custody.--The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.~~

(c) PRELEASE CUSTODY.—

(1) IN GENERAL.—The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

(2) HOME CONFINEMENT AUTHORITY.—The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

(3) ASSISTANCE.—The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during prerelease custody under this subsection.

(4) NO LIMITATIONS.—Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.

(5) REPORTING.—Not later than 1 year after the date of the enactment of the Second Chance Act of 2007 (and every year thereafter), the Director of the Bureau of Prisons shall transmit to the Committee on the Judiciary of the Senate and the Committee on the Judiciary of the House of Representatives a report describing the Bureau's utilization of community corrections facilities. Each report under this paragraph shall set forth the number and percentage of Federal prisoners placed in community corrections facilities during the preceding year, the average length of such placements, trends in such utilization, the reasons some prisoners are not placed in community corrections facilities, and any other information that may be useful to the committees in determining if the Bureau is utilizing community corrections facilities in an effective manner.

(6) ISSUANCE OF REGULATIONS.—The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that

placement in a community correctional facility by the Bureau of Prisons is—

(A) conducted in a manner consistent with section 3621(b) of this title;

(B) determined on an individual basis; and

(C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.